# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA HERNANDEZ, | CASE NO. 1:10-cv-00176-SMS |
| Plaintiff, | |
| v. | ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |
| MICHAEL ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Diana Hernandez seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI"), pursuant to Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) (the "Act"). The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge.[1] Following a review of the complete record and applicable law, this Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court denies Plaintiff's appeal.

## I.   Administrative Record

### A.   Procedural History

On September 30, 2006, Plaintiff filed an application for supplemental security income (SSI), alleging a disability beginning March 1, 2004. Her claim was denied initially on January

---

[1] Both parties consented to the jurisdiction of a United States Magistrate Judge (Docs. 9 & 10).

25, 2007, and upon reconsideration, on March 6, 2009.  Plaintiff filed a timely request for a hearing at which she appeared and testified at a hearing on October 29, 2003.  On April 23, 2009, Administrative Law Judge Patricia Leary Flierl ("ALJ") found that Plaintiff was not disabled under 42 U.S.C. § 1614(a)(3)(A).

On February 2, 2010, Plaintiff filed a complaint seeking this Court's review (Doc. 1). Plaintiff does not dispute the ALJ's findings related to her physical impairments and challenges only the ALJ's determination of her residual functional capacity as a result of her depression. Doc. 12 at 3.

### B.     Factual Record

Because Plaintiff (born September 24, 1962) focuses this appeal on her alleged psychological disabilities, this decision will not address matters in the record relating to her physical disabilities except to the extent that they relate to Plaintiff's psychological condition. Plaintiff's medical records reflect a diagnosis of depression throughout the administrative record. She also has a history of drug and alcohol abuse, now reportedly in remission.

Plaintiff did not mention depression or list any antidepressant medications in her October 12, 2006 adult disability report or in her adult function report dated December 17, 2006. Nor did Plaintiff mention depression in her undated disability report (appeal) (*see* AR 213-219). Although Plaintiff's husband noted that Plaintiff was "moody" and did not handle stress "very well," he did not explicitly report depression in the third-party adult function report dated December 21, 2006.

In a disability report (appeal) dated July 25, 2007, however, Plaintiff complained, "I don't know why your Doctor's [don't] notice my depression." AR 220.  She reported that Nurse Practitioner S. Ciccheti had prescribed Zoloft[2] for depression and that Dr. D. Hylton had

///
///
///

---

[2] Zoloft (sertraline) is used to treat depression, obsessive-compulsive disorder, panic attacks, posttraumatic stress disorder, and social anxiety disorder.  www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001017 (April 27, 2011).

prescribed Amitriptyline[3] for anxiety and depression.  She remarked, "I am depress[ed] always."  AR 225.

In documentation transmitted to the agency on February 13, 2009, Plaintiff reported that APEX Medical Corp. had prescribed Prozac[4] for depression and Diazepam[5] for pain and depression.  She had been hospitalized in November 2008 at Memorial Hospital of Los Banos for an anxiety attack.

**Medical records.**  Plaintiff's primary care physician, Daniel E. Hardy, Sr., M.D., monitored her sleeping problems and depressive disorder and prescribed antidepressants. At various points, his notes reported her history of drug and alcohol dependence and specified that narcotics should not be prescribed.  On March 25, 1998, Hardy diagnosed situational anxiety, noting that Plaintiff was distraught regarding physical abuse by her son, who was using drugs and alcohol.  He prescribed Buspar[6] to be taken as needed for anxiety.  On July 22, 1999, after Plaintiff reported great stress from marital problems, he prescribed Serzone[7] and recommended marriage counseling.

Hardy prescribed Paxil[8] beginning in or about July 2000.  At an appointment on February 9, 2001, Plaintiff reported that she stopped taking Paxil after three months and that she still felt depressed, tired, low on energy, lacking motivation, and short-tempered.  She sometimes cried.

---

[3] Amiltriptyline is a tricyclic antidepressant.  www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000666 (April 27, 2011).

[4] Prozac (fluoxetine) is used to treat depression, obsessive-compulsive disorder, and panic attacks. www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000885 (April 27, 2011).

[5] Diazepam is used to relieve anxiety, muscle spasms, and seizures and to control agitation caused by alcohol withdrawal.  A common brand is Valium.  www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000556 (April 26, 2011).

[6] Buspar (buspirone) is used for short-term treatment of anxiety. www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000876 (April 27, 2011).

[7] Serzone (nefazodone) is used to treat depression.  www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000956 (April 27, 2011).  After the use of Serzone was banned by some countries in 2003 due to liver toxicity, its manufacturer withdrew it from the market in the United States and Canada.

[8] Paxil (paroxetine) is used to treat depression, panic disorder, and social anxiety disorder. www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001037 (April 27, 2011).

Hardy again prescribed Paxil and scheduled a follow-up in six weeks to see if further adjustment was needed. In March 2001, Hardy prescribed Remeron.[9]

Hardy prescribed Effexor[10] on November 28, 2001. Plaintiff reported that she was doing well until she briefly discontinued Effexor in January 2002 and found that she was feeling anxious and irritable and not sleeping well. Hardy again prescribed Effexor.

The first indication of his prescribing Wellbutrin[11] is in notes from December 11, 2003, in which Hardy noted that Plaintiff was depressed, awakening at night, and having mood swings, fatigue, and no energy since her daughter-in-law moved away with her grandchild, leaving no forwarding address. On various visits in 2004, Hardy noted depression, responding well to Wellbutrin. On July 22, 2005, Hardy noted that Plaintiff returned "after a long hiatus," with a recurrence of depression and irritability attributable to problems with the behavior of her grown daughter. Hardy noted painful tension in Plaintiff's shoulders and neck, which he attributed to stress. On September 6, 2005, Hardy increased Plaintiff's dosage of Wellbutrin, noting Plaintiff was experiencing excessive stress from her husband's verbal abuse but was afraid to report his threats to the police for fear of involving Child Protective Services, with whom she had previously had dealings for other reasons. On October 27, 2005, Hardy noted, "With the higher dose of Wellbutrin, she states her mood, motivation, concentration and energy are good, but she is having problems falling asleep at night." AR 260.

The records of Plaintiff's gynecologist, Stephen Georgiou, M.D., noted that she was taking Wellbutrin in March 2004.

H. Anjum, M.D., of the Apex Medical Group Notes first examined Plaintiff on December 6, 2007, diagnosing depression and anxiety. Examination notes for January 7, and October 23, 2008, did not mention depression, but noted a prescription for Prozac. Examination notes for

---

[9] Remeron (mirtazapine) is prescribed to treat depression. www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000995 (April 27, 2011).

[10] Effexor (venlafaxine) is used to treat depression and certain anxiety disorders. www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000947 (April 27, 2011).

[11] Wellbutrin (bupropion) is used to treart depression.  www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000970 (April 27, 2011)

January 21, February 5, August 26, 2008, did not mention depression or anxiety. In Anjum's notes about Plaintiff's examinations on September 26, and November 21, 2008, the doctor noted depression and anxiety without elaboration of symptoms. On December 22, 2008, and January 7, 15 and 28, 2009, he again noted depression in Plaintiff's examination notes. On February 2, 2009, Anjum noted that Plaintiff had many problems and was living on the street. He noted Plaintiff's depression and requested a psychiatry referral.

On February 2, 2009, Anjum opined that Plaintiff could never perform any of the physical activities listed on the form but responded "N/A" for each question seeking information on mental or emotional limitations.

**Psychiatric Evaluation (December 17, 2006).** Soad Khalifa, M.D., examined Plaintiff and prepared a psychiatric evaluation for the agency on December 17, 2006. He reviewed some progress notes from around October 2005, in which Plaintiff's doctor diagnosed with depressive disorder and prescribed Wellbutrin. In addition to various physical disorders, Plaintiff complained of depressed mood, difficulty controlling her temper, and sleep disturbances. She denied suicidal or homicidal thoughts. She had never seen a psychiatrist. Plaintiff reported being homeless since the family lost its house when her husband did not make the mortgage payments. She had been living with her aunt for two years.

Khalifa found Plaintiff's psychiatric history unremarkable except that Plaintiff reported having attended anger management groups. She had been jailed for possession and use of PCP.

Khalifa described Plaintiff as small and thin. Her concentration was intact: persistence and pace were fair. She was alert and fully oriented. Her speech was coherent and of normal rate. Her stream of mental activity was linear. Her memory was intact. She thought mainly about her physical problems and depression. She made good eye contact and was cooperative. Khalifa diagnosed:

| | |
|---|---|
| Axis I | Depressive disorder not otherwise specified. |
| Axis II: | Deferred. |
| Axis III: | Osteoporosis.<br>Pain. |

Axis IV:    Homeless.
            Physical problems

Axis V:     55-60

AR 314.[12]

Khalifa described Plaintiff as having "mild depressive symptoms" and projected that her condition would be the same in twelve months. He provided the following functional assessment:

> She is unable to manage her funds. She could not do calculations.
>
> She will have restrictions of daily activities and social functioning because of her pain. She complained of knee pain, leg pain, hand pain, and shoulder pain, and she has osteoporosis. She is susceptible to fractures. On the medical records I reviewed bone density, and the bone density showed osteoporosis and susceptibility for fractures. Also she has limited social skills. She has headaches when she needs morphine injections. She gets angry easily and has a history of attending anger management.
>
> She would benefit from antidepressants and maybe pain management. She will benefit from medication to prevent her migraines, like Inderal or propranolol. She can take them on a daily basis prophylaxis to prevent migraines, or she can take Depakote to prevent migraines. There are many medications to prevent migraines, but she will benefit also from antidepressants and supportive therapy to talk about her history of physical abuse.

AR 314-315.

**Internal Medicine Consultation (December 20, 2006).** In an internal medicine consultation report dated December 20, 2006, internist A.S. Pannu, M.D., noted that Plaintiff had a history of depression but was not then taking any antidepressant medication. Her neurological examination was normal.

**Psychiatric review technique (January 16, 2007).** H.T. Unger, who prepared the psychiatric review technique for the agency on January 16, 2007, noted that Plaintiff claimed an

---

[12] The Global Assessment of Functioning (GAF) scale may be used to report an individual's overall functioning on Axis V of the diagnosis. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 32 (4th ed., Text Revision 2000) ("DSM IV TR"). It considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness," excluding "impairment in functioning due to physical (or environmental) limitations." *Id.* at 34. The first description in the range indicates symptom severity; the second, level of functioning. *Id.* at 32. In the case of discordant symptom and functioning scores, the final GAF rating always reflects the worse of the ratings. *Id.* at 33.
GAF 55-60 is the upper half of the range GAF 51-60, which indicates "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attack) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.* at 34.

affective disorder, identified as depressive disorder, not otherwise specified.  He assessed Plaintiff as having mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace.  She demonstrated no episodes of decompensation.

Analyzing Plaintiff's residual functional capacity, Unger opined that Plaintiff had moderate limitations in her ability to understand and remember detailed instructions, to carry our detailed instructions, to maintain attention and concentration for extended periods, and ability to complete a normal workweek without interruption from psychologically based symptoms.  The record showed no evidence of limitations in her ability to adapt to changes in the workplace or to set realistic goals and make plans independent of others.  She was not significantly limited in any other category.  Unger remarked that Plaintiff's limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaption were minimal.

**Plaintiff's testimony (March 6, 2009).**  Plaintiff attended school through the tenth grade, and never received a diploma or GED.  Plaintiff had recently received training in park maintenance through Calworks.  Although she primarily was a housewife, she worked briefly as a teacher's aide in a kindergarten class and sorted walnuts for two seasons.

Plaintiff complained of depression, which consisted of crying about twice a week, triggered by "her house"[13] or by her hating "for [her] kids to see her like this."  She never experienced suicidal thoughts.  Her depression did not affect her ability to function.

Plaintiff also experienced panic attacks about once a month, which impaired her breathing.  If she could not calm down, she went to the emergency room for a shot of morphine.

Plaintiff took Prozac, which was prescribed by her family doctor.  She never participated in counseling or therapy nor had any one ever recommended it.  She once walked in "mental health" but was never seen because MediCal had to approve treatment.  Her doctor had also

///

---

[13] The meaning of this testimony is unclear.  Possible references could be to Plaintiff's repeated references to her inability to keep her house clean or to the earlier loss of the family home following her husband's defaulting on the mortgage payments.

prescribed diazepam and trazadone.[14]  Although the prescriptions were to be taken three times daily, Plaintiff only took them once a day, at bedtime, because they made her sleepy.

**Vocational expert testimony (March 6, 2009).**  Vocational expert Jose Chapparro testified.  For the first hypothetical question, the ALJ directed Chaparro to assume an individual of the same age and educational background as Plaintiff, with no work history, limited to light exertional level and to simple and repetitive tasks.  Chaparro opined that the majority of light unskilled work would be available.  Exemplary positions would include housekeeping cleaner (No. 323.687-014; 243,000 jobs nationally, 24,200 in California) and fast foods worker (No. 311.472-010; 1,942,000 jobs nationally, 171,300 in California).

For the second hypothetical question, the ALJ directed Chaparro to assume the same individual, but limited to sedentary exertional level and simple unskilled jobs.  Chaparro opined that the majority of unskilled sedentary jobs would be available.  Exemplary positions would include callout operator (237.367-014; 13,600 jobs nationally, 1200 in California), microfilming document preparer (No. 249.587-018; 25,000 positions nationally, 3300 in California), and addresser (No. 209.587-010; 30,200 jobs nationally, 4900 in California).

For the third hypothetical question, the ALJ directed Chaparro to assume the same individual as in hypothetical question two, except that chronic pain prevents activity for eight hours per day.  Chaparro opined that no such jobs were available.

Plaintiff's attorney posed an additional hypothetical question.  She directed Chaparro to assume the same individual as in hypothetical question two, with moderately limited ability to maintain attention and concentration for extended periods, and a moderate limitation in ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Chaparro responded that no such jobs were available.

///

---

[14]  Trazadone is a serotonin modulator that is prescribed to treat depression.  It is usually taken two or more times daily.  www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000530 (April 26, 2011).

8

## II. Discussion

### A. Scope of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, a court must determine whether substantial evidence supports the Commissioner's decision. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards, and if the ALJ's findings are supported by substantial evidence. *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).

### B. Legal Standards

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability.

///

20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). The process requires consideration of the following questions:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of September 30, 2006. Her severe impairments included osteopenia, sciatica with chronic back pain of indeterminate etiology, upper extremity overuse syndrome, and depression. The ALJ concluded, however, that none of Plaintiff's impairments met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P. Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). Plaintiff had no past relevant work. The ALJ found that Plaintiff had residual functional capacity to perform light work: to lift and carry ten pounds occasionally, and to stand and/or walk for two hours in an eight-hour work day, and that Plaintiff had the mental capacity to perform simple unskilled work.

### C. **Residual Functional Capacity**

Plaintiff contends that the ALJ erred in adopting the opinions of Dr. Khalifa without analyzing the opinion of Dr. Unger that Plaintiff would be unable to complete a normal work day or week without interruption from psychologically based symptoms. As a result, says Plaintiff, the ALJ's opinion is not supported by substantial evidence. Noting that Plaintiff herself testified that her depression did not affect her ability to work at all, the Commissioner responds that the

///

ALJ's opinion was consistent with both physicians' opinions. This Court's review of the record indicates that the ALJ's opinion was well supported by substantial evidence.

**ALJ's Determination.** The ALJ found:

> In regard to depression, the claimant testified that she cries twice a week. Health concerns trigger the crying. She used to paint and do puzzles as hobbies. She also has anxiety attacks about once a month when it's hard for her to breath. She pushes her kids to the side, goes to the hospital for morphine, and then she feels "softer." She takes Prozac and Trazadone.

AR13.

Later, the ALJ added:

> The claimant was treated by Dr. Hardy for situational anxiety in March 1998, and an assessment of adjustment disorder with anxiety was made in January 1999. He reported that she had been very depressed and stressed due to family matters. Paxil was prescribed but stopped after 3 months. In February 2001 recurrent depression and tension headaches were diagnosed. In December 2003, Dr. Hardy recorded that the claimant was depressed, had frequent nighttime awakening, mood swings, and fatigue. Recurrent depression/ adjustment disorder was diagnosed and Wellbutrin prescribed. He recorded in August 2004 that she was responding to Wellbutrin. When he saw her again in September 2005 after a long hiatus she had stopped the Wellbutrin and had a recurrence of symptoms. It was restarted with visible improvement according to the October 2005 report. The claimant did not receive treatment from a mental health professional although Dr. Hardy recommended it. Later treating doctors have prescribed medication for her symptoms of depression and/or anxiety as they relate to her physical complaints.
>
> Substantial weight is given to the opinion of consultative psychiatrist Dr. Khalifa that the claimant has mild depressive symptoms and would benefit from antidepressants. On examination, the claimant was able to remember 3 out of 3 items immediately and in a few minutes, knew Presidents Bush and Clinton, was able to spell backward and responded well to questions about similarities and differences, but her judgment and abstract reasoning were limited. Dr. Khalifa opined that due to her inability to perform calculations, she is unable to manage her funds. Based on Khalifa's examination, the state agency medical consultants concluded that the claimant would be able to perform simple repetitive tasks as required for simple unskilled work, but would have moderate difficulty understanding, remembering and carrying out detailed instructions, or maintaining attention and concentration for extended periods.

AR 14-15 (*references to hearing exhibits omitted*).

Three types of physicians may offer opinions in social security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (nonexamining physicians)." *Lester*, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight that the opinion of a doctor who examined but did not treat the claimant,

and an examining physician's opinion is generally entitled to more weight than that of a non-examining physician. *Id.* The Social Security Administration favors the opinion of a treating physician over that of nontreating physicians. 20 C.F.R. § 404.1527; *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician is employed to cure and has a greater opportunity to know and observe the patient. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Nonetheless, an ALJ may disregard the opinion of a treating physician even if it is uncontradicted. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the ALJ rejects the opinion of a treating physician, his determination must be supported by clear and convincing reasons. *Lester*, 81 F.3d at 830-31.

Of Plaintiff's treating physicians, only Dr. Anjum expressed an opinion regarding Plaintiff's limitations, but his opinion disregarded any mental limitations, marking each question about mental limitations as not applicable. Combined with Plaintiff's testimony that her depression did not affect her ability to function and with her testimony that she omitted two of three daily doses of her antidepressants because they made her sleepy, strong support existed for a determination that Plaintiff's mild depression was not disabling.

With regard to Dr. Khalifa and Dr. Unger's opinions, since Khalifa actually examined Plaintiff, Khalifa's opinion is entitled to more weight than Unger's opinion as a matter of law. Unger is a non-examining physician whose opinion is entitled to the least weight. And even if it were not entitled to the least weight, Unger's functional capacity assessment did not rise to a level that would compel a conclusion that Plaintiff was disabled: He concluded that Plaintiff's limitations in (1) understanding and memory; (2) sustained concentration and persistence, (3) social interaction, and (4) adaption were all minimal.

Plaintiff correctly contends that the ALJ failed to address Unger's opinion in his hypothetical questions and written decision. Since the omission would not have changed the result of the ALJ's decision, any such error was harmless.

"The court shall have the power to enter, upon pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In social security cases, the decision

to remand to the Commissioner to award benefits is within the court's discretion. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Since remanding for the addition of a discussion of Unger's opinion would not change the result, remand is not required here.

### III.     Conclusion and Order

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

**Dated:    May 3, 2011**                             /s/ Sandra M. Snyder
                                                                 UNITED STATES MAGISTRATE JUDGE